## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

ALONZO FREEMAN, JR.,                    :

      Petitioner,                    :          Case No.  3:03CV145

vs.                                     :          District Judge Walter Herbert Rice
                                                   Magistrate Judge Sharon L. Ovington
ANTHONY J. BRIGANO, Warden,[1]          :
Lebanon Correctional Institution,

                                        :
      Respondent.

                                        :

---

## REPORT AND RECOMMENDATIONS[2]

---

### I.       INTRODUCTION

On July 7, 1999, Petitioner Alonzo Freeman, Jr. fired a gun at two police officers wounding each.  Freeman was also wounded when the officers returned fire.  Fortunately for all involved, no one was killed.

A grand jury in state court charged Freeman with two counts of Attempted Murder in violation of Ohio Revised Code §2923.02(A), with a firearm specification attached to each count.  (Doc. #4, Exhibit 1).

On March 1, 2001, a jury in the Court of Common Pleas, Montgomery County, Ohio, found Freeman not guilty of Attempted Murder but guilty of two counts of Felonious Assault along with a firearm specification for each offense.  (Doc. #4, Exhs. 14, 15).  The jury

---

[1]  Anthony Brigano is no longer the Warden of the Lebanon Correctional Institution.  Ernie Moore is the current Warden of the Lebanon Correctional Institution and is therefore the proper Respondent in this case.  The case caption should remain the same for clerical continuity.

[2]  Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

instructions and verdict form characterized each Felonious Assault charge as a "lesser included offense" of Attempted Murder.  (Doc. #4, Exhs. 14, 15, 37 at 1142-48).  The trial court also instructed the jury on "the lesser included offense of Aggravated Assault."  (Doc. #4, Exhs. 14, 15, 37 at 1142-48).  Pursuant to the trial judge's instructions, the jury did not reach a verdict on Aggravated Assault, in light of the determination that Freeman was guilty of two counts of Felonious Assault.  (Doc. #4, Exhs. 14, 15; *see* Exh. 37 at 1147-48).

In general, Ohio statutory law defines Felonious Assault as a second degree felony, *see* Ohio Rev. Code §2903.11(D), potentially subjecting Freeman to a sentence of "two, three, four, five, six, seven, or eight years," Ohio Rev. Code §2929.14(A)(2).  The trial court sentenced Freeman to the maximum consecutive sentences of eight years on each Felonious Assault conviction plus a three-year term of imprisonment for the firearm specification conviction, totaling a nineteen-year term of imprisonment.  (Doc. #4, Exh. 16; *see* Exh. 37, Tr. at 1171).

Most significantly for Freeman's claims in the present case, Ohio statutory law defines Felonious Assault as a first degree felony when the victim is a peace officer.  *See* Ohio Rev. Code §2903.11(D).  First degree felonies are punishable under Ohio law by imprisonment lasting "three, four, five, six, seven, eight, nine, or ten years."  Ohio Rev. Code §2929.14(A)(1).  The trial court did not consider or instruct the jury on the offense of Felonious Assault of a Peace Officer.

Following unsuccessful appeals in the Ohio courts, Freeman, now an inmate at the Lebanon Correctional Institute in Lebanon, Ohio, brings this case *pro se* seeking a Writ of Habeas Corpus under 28 U.S.C. §2254.  This matter is before the Court upon Respondent's Answer (Doc. #4), Freeman's Replies and Supplemental Memoranda (Docs. # 6-9), and the record as a whole.

2

II.     **FREEMAN'S APPEALS**

A.     <u>**Freeman's Direct Appeal**</u>

Freeman, through counsel, filed a timely direct appeal of Freeman's convictions in the Ohio Court of Appeals raising three Assignments of Error, challenging the trial court's denial of Freeman's Motion to Suppress.  (Doc. #4, Exh. 18).

Freeman later filed a *pro se* Motion for Leave to File a Supplemental brief, which the Ohio Court of Appeals overruled because Freeman was still represented by counsel.  (Doc. #4, Exhs. 19, 20).  In doing so, the Court of Appeals declined to accept any *pro se* filings by Freeman absent a clear indication that he no longer wished to proceed with appointed counsel.  (Doc. #4, Exh. 20).  Despite this, Freeman filed two supplemental *pro se* briefs.  (Doc. #4, Exhs. 22, 23).  His supplemental *pro se* briefs prompted a Motion to Strike by the State, which the Court of Appeals granted again due to the fact that Freeman had not clearly indicated his desire to proceed without representation by counsel.  (Doc. #4, Exhs. 24, 25).  This left pending before the Ohio Court of Appeals only the three assignments of error challenging the trial court's denial of Freeman's Motion to Suppress.

On February 15, 2002, the Ohio Court of Appeals affirmed the trial court's denial of Freeman's Motion to Suppress.  (Doc. #4, Exh. 26).  In its decision, the Ohio Court of Appeals accepted and quoted the trial court's factual summary, which in the present case is subject to a presumption of correctness absent Freeman's rebuttal by clear and convincing evidence in this case.  *See* 28 U.S.C. §2254(e)(1).  Freeman has not argued that such evidence exists, and consequently the presumption of correctness, *id*., applies to the following factual summary by the Ohio courts:

On July 7, 1999, Officers August and Jackson were on bicycle patrol in Arlington Courts, a Dayton Metropolitan Housing Authority ('DMHA') property. The Officers engaged in discussion with two juveniles in the area.  After the discussion, Officer August saw an individual he knew as Chris Nesby riding on a bicycle toward their location.  It was determined that Mr. Nesby was on the DMHA property trespass list.  Officer August informed Mr. Nesby he was under arrest, and Mr. Nesby fled on foot through the Arlington Courts complex.  Both Officers August and Jackson pursued Mr. Nesby to 352 Chicahominy, the home of Deborah Nesby.

According to the testimony, Officer Jackson went to the back of the residence while Officer August stayed in the front.  Officers Robinson and Krauskopf arrived at the back of the residence and officer Jackson then went to the front.  Officers Gift and Tobias had joined Officer August in the front of the home.  The testimony reveals that Officer Gift was explaining to Ms. Nesby what was taking place.

The testimony further reveals that Officer Jackson went to the window and advised Ms. Nesby that he was in charge of the DMHA task force.  Officer Jackson testified that he told Ms. Nesby that they either needed to come in or Mr. Nesby needed to come out so that he could be arrested.  Officer Jackson told Ms. Nesby that if she did not comply, she could be evicted from DMHA property.  The testimony shows that Ms. Nesby understood the possible DMHA consequences.  After further conversation, Ms. Nesby stated, 'let me get my babies out of here all right.'  Ms. Nesby then opened the door and took the children out of the apartment, allowing the Officers to enter.  Officer Jackson asked if there were any guns in the home, and Ms. Nesby indicated 'that she did not know what they had.'  The Officers proceeded into the house to arrest Mr. Nesby.  Subsequently, Officer Jackson escorted Mr. Nesby out of the house.

Deputy United States Marshall William Taylor testified that Officers August and Robinson went upstairs to talk to the Defendant, Alonzo Freeman, who was in the apartment and had been yelling at the Officers.  Mr. Freeman is the son of Ms. Nesby.  The testimony shows that none of the Officers had previously spoken with the Defendant.  The testimony indicates that Officer August pushed against the upstairs door and it appeared that the door was being held.  According to Officer Taylor, when the door finally opened, the person inside the room began firing a weapon at the Officers.

(Doc. #4, Exh. 26 at 4-5).

The Ohio Court of Appeals next explained, "In the ensuing gun battle, two officers and

Freeman were wounded.  The evidence in the record reflects that the casualties were removed

4

from the scene, and the apartment was secured by the police.  Later that same evening, a search

warrant was obtained, and a search of the premises was conducted pursuant to the search

warrant.  Freeman was arrested and charged with two counts of Attempted Murder, each with a

firearm specification."  *Id*. at 5-6.

When affirming the trial court's denial of Freeman's Motion to Suppress, the Ohio Court

of Appeals rejected each assignment of error raised by Freeman's appellate counsel.  *Id*. at 7.

Freeman did not file a timely direct appeal in the Ohio Supreme Court.  Instead, he next

filed in the Ohio Court of Appeals a *pro se* Application to Reopen his Appeal under Ohio R.

App. P. 26(B).  (Doc. #4, Exh. 27).

**B.**     **Freeman's Rule 26(B) Application**

Freeman claimed in his Rule 26(B) Application that the trial court deprived him of his

right to due process under the Fifth and Fourteenth Amendments to the Constitution, "as well as

the 6th [A]mendment by not having any notice of the charges against him or the effective

assistance of trial or appellate counsel."  (Doc. #4, Exh. 30 at 4).  Freeman reasoned that because

the victims were police officers, the type of Felonious Assault he committed – Felonious Assault

of a Police Officer, *see* Ohio Rev. Code §2903.11(D) – was a first degree felony, just like

Attempted Murder.  Consequently, according to Freeman, the type of Felonious Assault he was

accused of committing was not a lesser included offense of Attempted Murder.  (Doc. #4, Exh.

30 at 3-6).  This, in turn, meant that by instructing the jury on Felonious Assault, the trial court

constructively amended the indictment, thereby depriving Freeman of his constitutional right to

fair notice of charges against him.  Freeman further argued that by failing to raise this

constitutional claim at trial and on his direct appeal, his trial and appellate counsel provided

constitutionally ineffective assistance.

5

For reasons to be detailed later, *infra*, §IV(C)(2), the Ohio Court of Appeals rejected Freeman's contentions and dismissed his Rule 26(B) Application.  (Doc. #4, Exh. 32).

Freeman then filed a timely appeal in Ohio Supreme Court again challenging as violations of the Fifth and Fourteenth Amendments the denial of his right to due process, "as well as the 6th [A]mendment by not having any notice of the charges against him or the effective assistance of trial or appellate counsel."  (Doc. #4, Exh. 34 at 5).  On July 3, 2002, the Ohio Supreme Court filed a conclusory Entry dismissing Freeman's appeal.  (Doc. #4, Exh. 36).

### C.     Freeman's Delayed Direct Appeal

At this point Freeman apparently realized that he could still challenge the Ohio Court of Appeals' original decision on his direct appeal.  Freeman therefore filed, on July 24, 2002, a Motion for Delayed Appeal in the Ohio Supreme Court.  (Doc. #4, Exh. 28).  He explained in part that he sought to again challenge the trial court's rejection of his Motion to Suppress.  *Id*. at 3-4.  He did not attempt to raise the federal constitutional claims he had litigated in his Rule 26(B) proceedings.  *See id*.

On September 4, 2002, by a conclusory Entry, the Ohio Supreme Court denied Freeman's Motion for Delayed Appeal.  (Doc. #4, Exh. 29).

### D.     Freeman's Federal Habeas Corpus Petition

Freeman's present Habeas Petition raises the following:

GROUND ONE:     Petitioner was denied the right to fair notice of the charges against him in violation of the [F]ourteenth [A]mendment to the Unites States Constitution when the trial court constructively amended the indictment to include charges for which the petitioner had no notice of, and no opportunity to prepare a defense.

(Doc. #1, Memo. at 5).

In a supplement to his Traverse/Response filed on May 13, 2005, Freeman asserted as

another ground for habeas relief:

GROUND TWO:    Petitioner Has Been Denied the Right to a Jury Trial Where the Facts
Supporting the Court's Finding That the Petitioner Committed 'The Worst
Form of the Offense' and That the 'Harm Caused Was So Great or
Unusual' Were Neither Found by the Jury Beyond a Reasonable Doubt,
Nor Admitted to by the Petitioner in Violation of the Sixth Amendment of
the United States Constitution.

(Doc. #8).  Freeman explains that he bases this Ground for Relief on the rule established by

*Blakely v. Washington*,  542 U.S. 296 (2004) and various similar Ohio cases decided after

*Blakely*.  (Doc. #s 7-9).


IV.    **DISCUSSION**

A.    **Freeman's Federal Claims in Ground One**

Respondent contends:

Freeman's claim in Ground One is worded as a claim challenging the trial
court's decision to instruct the jury on a question of Ohio law, that is whether
Felonious Assault is a lesser-included offense of Attempted Murder.  Freeman
argues that the trial court constructively amended the indictment to so instruct the
jury; however, no actual amendment to the indictment was made.  As worded,
Freeman's Ground One does not present a claimed violation of federal law, a
prerequisite to this court's jurisdiction to review his conviction....  Freeman's
state law claim that the jury instructions were wrong and that Ohio law was
misstated in the instructions does not present a federal question and was not
presented to the Ohio courts.  Consequently, that question is procedurally
defaulted.  Freeman's complaint that he was denied notice of the charges against
him as a result of the instructions does present a federal question, a due process
violation, but it too was never properly before any state court.

(Doc. #4 at 13-14).

Respondent is correct to the extent that Freeman's Petition attempts to raise claims under

state law; such claims are not cognizable in a federal habeas corpus case under §2254.  *See* 28

U.S.C. §2241(a), (c)(3); *see also Pulley v. Harris*, 465 U.S. 37, 41 (1984).  However, to his

credit, Respondent also correctly acknowledges that federal due-process challenges to state-law

7

jury instructions are cognizable "when the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  (Doc. #4 at 13 n.1 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

A review of Freeman's Petition reveals that he seeks to raise a federal constitutional challenge to the trial court's decision to instruct the jury on Felonious Assault.  *See* Doc. #1 at 8-14.  Freeman contends that the Felonious Assault jury instruction constructively amended the indictment to include an offense that is not a lesser-included offense of Attempted Murder in violation of his constitutional right to fair notice of the charges against him.  *Id.* (citing *Schmuck v. United States*, 489 U.S. 705, 109 S.Ct. 1443 (1989); *Lucas v. O'Dea*, 179 F.3d 412 (6th Cir. 1999); *Koontz v. Glossa*, 731 F.2d 365 (6th Cir. 1984); *Watson v. Jago*, 558 F.2d 330 (6th Cir. 1977)).  In this manner, Freeman's First Ground for Relief in his Habeas Petition, liberally construed in his favor, raises two federal constitutional claims:

1. The trial court constructively amended the indictment in violation of his right to due process and fair notice of the charges in violation of the Fifth, Sixth, and Fourteenth Amendments to the Constitution;[3] and

2. The trial court's jury instructions on the lesser-included offense of Felonious Assault deprived him of due process in violation of the Fourteenth Amendment to the Constitution.[4]

In light of these federal constitutional claims, the next issue is whether Freeman fairly presented them to the Ohio courts or whether he committed a procedural default by failing to do so.

### B.      Procedural Default and Waiver

---

[3]  *See Lucas*, 179 F.3d at 417 ("a state prisoner petitioning for habeas corpus relief has a due process right to be informed of the nature of the accusations against him.").

[4] *See Naughten*, 414 U.S. at 146-47.

8

## 1.
## Applicable Standards

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies..., thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)(internal citations and punctuation omitted). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court..., alerting that court to the federal nature of the claim." *Reese*, 541 U.S. at 29 (citations omitted).

To fairly present federal claims to the Ohio courts, a petitioner must raise the substance of them in direct or delayed appeals to the Ohio Court of Appeals and the Ohio Supreme Court. *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004); *see also Fields v. Bagley*, 275 F.3d 478, 482-83 (6th Cir. 2001). A petitioner must also bring certain claims in a petition for post-conviction relief under Ohio Rev. Code §2953.21 or in an Application to Reopen Appeal under Ohio R. App. P. 26(B). *See Lopez v. Wilson*, 426 F.3d 339, 342-43 (6th Cir. 2005)(*en banc*).

Regardless of which avenue of appeal a convicted defendant takes, he must properly raise federal constitutional claims in both the Ohio Court of Appeals and the Ohio Supreme Court. "'[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.'" *Williams v. Bagley*, 380 F.3d 932, 967 (6th Cir. 2004)(quoting *O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999)).

To fairly present a federal constitutional claim to the state courts, a petitioner must (1) rely upon federal cases employing constitutional analysis; (2) rely upon state cases employing federal constitutional analysis; (3) phrase the claim in terms of constitutional law or in terms

sufficiently particular to allege a denial of a specific constitutional right; or (4) allege facts well within the mainstream of constitutional law.   *Whiting v. Burt*, 395 F.3d 602, 613 (6th Cir. 2005).

If a petitioner fails to fairly present his or her federal claims to the state courts and if a state procedural rule bars the petitioner from receiving in state court a merits review of the federal claims, then the petitioner's procedural default may result in a waiver of the claims for purposes of federal habeas review.  *See Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004); *see also Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001).  In Ohio, one way a petitioner may procedurally default is by failing to raise on direct appeal claims appearing on the face of the trial record.  *Bagley*, 380 F.3d at 967.  This constitutes a procedural default under Ohio's doctrine of *res judicata*.  *Id*.  As applied by the Ohio courts, "*res judicata* is an adequate and independent state ground for barring habeas review of constitutional claims."  *Id*.

Only two limited situations excuse a procedural default:  (1) if a petitioner shows cause and prejudice or (2) if the petitioner shows a fundamental miscarriage of justice will result from the failure to consider the merits of the claims.  *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Monzo v. Edwards*, 281 F.3d 568, 575 (6th Cir. 2002).

## 2.
## Freeman's Procedural Default

On Freeman's direct appeal in the Ohio Court of Appeals, Freeman's attorney did not raise a due process challenge to the Felonious Assault jury instruction and did not claim that the trial court's instruction constructively amended the indictment in violation of Freeman's rights under the Fifth, Sixth, and Fourteenth Amendments.  *See* Doc. #4, Exh. 18.  In contrast, Freeman himself attempted to raise these claims in his *pro se* Motion for Leave to File a Supplemental

Brief and in the *pro se* briefs he attempted to file in the Ohio Court of Appeals.  *See* Doc. #4, Exhs. 19, 22.  In doing so Freeman cited a state case, *State of Ohio v. Deem*, 40 Ohio St.3d 205 (1988) and he asserted that his alleged criminal offense was not Felonious Assault but was the more serious offense of Felonious Assault of a Police Officer.  Freeman reasoned that because the latter offense is not a lesser-included offense of Attempted Murder, the trial court's instruction on Felonious Assault deprived him of his federal constitutional right to due process and constituted an amendment to the indictment in violation of the Sixth Amendment.  *See* Doc. #4, Exh. 22.  He also generally asserted that he was provided ineffective assistance of trial counsel.  *Id.*

On two occasions, the Ohio Court of Appeals rejected Freeman's *pro se* briefs because he was represented by appellate counsel.  *See* Doc. #4, Exhs. 20, 25.  It is unnecessary to determine in the present case whether this constituted an adequate and independent state procedural rule barring federal habeas relief, because Freeman did not raise these federal constitutional claims in the Ohio Supreme Court either in a timely direct appeal or in his Motion for Delayed Appeal. By failing to present these federal constitutional claims to the Ohio Supreme Court during his direct appeal, Freeman committed a procedural default.  *See O'Sullivan*, 526 U.S. at 845; *see also Bonilla*, 370 F.3d at 497 (procedural default by failure to file timely direct appeal in the Ohio Supreme Court).

### 3.
### Ineffective Assistance of Appellate Counsel

Respondent acknowledges that if Freeman's habeas Petition is construed liberally in his favor, it may also raise a federal claim of ineffective assistance of appellate counsel claim based on counsel's failure to raise on direct appeal the claim that trial counsel provided ineffective

assistance due to his failure to challenge the jury instructions on Felonious Assault. Respondent also further acknowledges that to the extent Freeman's First Ground for Relief is liberally construed as raising this ineffective assistance of appellate counsel claim, consideration of this claim on the merits is warranted. (Doc. #4 at 15).

Respondent is correct to acknowledge that liberally construing in Freeman's favor his First Ground for Relief, Freeman might be attempting to raise a federal constitutional claim that he was denied ineffective assistance of appellate counsel. Freeman raised this claim as required by Ohio procedural law by filing a timely Rule 26(B) Application in the Ohio Court of Appeals. *See* Ohio R. App. P. 26(B) ("A defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel...."); *see also Lopez*, 426 F.3d at 342-43. Freeman also fairly presented this claim in his Rule 26(B) appeal to the Ohio Supreme Court. *See* Doc. #4, Exh. 34 at 5. Consequently, Freeman did not commit a procedural default with regard to his ineffective assistance of appellate counsel claim, and this claim is not waived for purposes of federal habeas review.

In addition, ineffective assistance of appellate counsel may constitute cause for Freeman's two other federal constitutional claims, *see Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). As explained above, *supra*, §IV(B)(2), Freeman's two other federal constitutional claims are procedurally defaulted. However, before Freeman can use his appellate counsel's ineffectiveness as a basis for excusing his procedural default, he must show that he did not commit a procedural default with regard to his claim of ineffective assistance of appellate counsel. *Edwards*, 529 U.S. at 451-52. Freeman has done this by pointing to his timely Rule 26(B) Application in the Ohio Court of Appeals and his related appeal in the Ohio Supreme

12

Court.

Yet, before his ineffective assistance of appellate counsel can constitute cause and prejudice for his procedural default, Freeman must also show that his claim of ineffective assistance of appellate counsel has merit.  *See Lordi v. Ishee*, 384 F.3d 189, 194 (6th Cir. 2004)(citing *Edwards*, 529 U.S. at 450-51).  The analysis of Freeman's Petition thus turns next to this merits inquiry.

### C.    Ineffective Assistance of Appellate Counsel

### 1.
### The AEDPA

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("the AEDPA"), a Writ of Habeas Corpus may not issue with respect to any claim adjudicated on the merits in state court unless the adjudication either:

1.    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2.    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The phrases "contrary to" and "unreasonable application" have independent meanings:

A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the law set forth in ... [Supreme Court] cases, or if it decides a case differently that we have done on a set of materially indistinguishable facts.  The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from ... [the Supreme Court's] decisions but unreasonably applies it to the facts of a particular case.  The focus on the latter inquiry is whether the state court's application of clearly established federal law is objectively unreasonable ... and an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002)(citation omitted); *see Broom v. Mitchell*, 441 F.3d 392,

398 (6th Cir. 2006).

## 2.
## The Ohio Court of Appeals' Rule 26(B) Decision

The Ohio Court of Appeals rejected Freeman's Rule 26(B) Application as follows:

> In seeking to reopen his appeal, Freeman contends that his appellate counsel was ineffective for having failed to argue that the trial court erred when it instructed the jury on the lesser-included offenses of Felonious Assault, and when it entered convictions on those charges. Freeman contends that the Felonious Assault offenses are not lesser-included offenses, because they were committed against a police officer, and were therefore felonies of the first degree, just like the Attempted Murder offenses.

> As the State notes, however, the jury was not instructed on the offenses of Felonious Assault Upon a Police Officer, and Freeman was not convicted of those offenses. The jury was instructed simply on Felonious Assault – the knowingly causing of serious physical harm to another.

> Furthermore, as the State notes, Freeman's trial counsel acquiesced in the giving of an instruction on the lesser-included offense of Felonious Assault when it became clear that by doing so, Freeman could get an instruction on the lesser-included offense of Aggravated Assault.

> In short, it appears from the record that instructions on the lesser-included offense of Felonious Assault were appropriate, that Freeman's trial counsel acquiesced in the giving of those instructions, and that the acquiescence of Freeman's trial counsel in the giving of those instructions constituted reasonable trial strategy. Accordingly, we conclude that Freeman has failed to demonstrate that his appellate counsel was ineffective in not having assigned as error either the giving of the Felonious Assault instructions, or his trial counsel's failure to have objected to the giving of those instructions....

(Doc. #4, Exh. 32 at 2-3).

Whether or not this constituted an unreasonable application of federal constitutional law, as set forth in Supreme Court cases, or involved an unreasonable determination of fact, requires a discussion of the standards applicable to resolving claims of ineffective assistance of appellate counsel claims.

## 3.

14

## Applicable Standard of Review

Before addressing Freeman's claims of ineffective assistance of appellate counsel, it must be determined which standard of review applies to the Ohio Court of Appeals' Rule 26(B) decision:  the AEDPA's deferential standard of review or the *de novo* standard of review.

This issue arises because the Ohio Court of Appeals did not specifically address Freeman's claim that his appellate counsel provided ineffective assistance by failing to raise his claim that counsel provided constitutionally ineffective assistance by omitting his claim regarding the constructive amendment to the indictment.

The AEDPA's deferential standard of review applies to federal claims that were "adjudicated on the merits in State court...."  28 U.S.C. §2254(d); *see Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003).  "When a state court fails to address the merits of a properly raised ineffective assistance of appellate counsel issue...," federal courts conduct a *de novo* review. *McAdoo v. Elo*, 365 F.3d 487, 498 (6th Cir. 2004); *see Maples*, 340 F.3d at 436-37.

The AEDPA's deferential standard of review applies to the Ohio Court of Appeals' decision to reject Freeman's claims of ineffective assistance of appellate and trial counsel to the extent the Ohio Court of Appeals addressed Freeman based his ineffective assistance of counsel claims on his due process challenge to the Felonious Assault jury instructions.  However, because the Ohio Court of Appeals failed to address Freeman's ineffective assistance of counsel claim to the extent it was based on his assertion that counsel failed to challenge the Felonious Assault jury instruction as a constructive amendment to the indictment.  As a result, the *de novo* standard of review applies to this ineffective assistance claim.  *See Maples*, 340 F.3d at 437 (*de novo* standard of review applies to claim of ineffective assistance of counsel when state court failed to address issue of whether petitioner was prejudiced by counsel's performance).

**4.**
**Ineffective Assistance of Appellate Counsel – AEDPA Review**

If a state has granted criminal defendants a right to appeal their convictions, the Due Process Clause of the Fourteenth Amendment mandates the effective assistance of counsel. *Evitts v. Lucey*, 469 U.S. 387, 393-96 (1985); *see Franklin v. Anderson*, 434 F.3d 412, 428 (6th Cir. 2006).

To demonstrate that he was provided constitutionally ineffective assistance of counsel on direct appeal, a petitioner must first show that his "counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1986); *see Whiting v. Burt*, 395 F.3d 602, 616 (6th Cir. 2005).

The Ohio Court of Appeals' Rule 26(B) decision does not cite to *Strickland* or any case of ineffective assistance of counsel. The Ohio Court of Appeals' Rule 26(B) decision, however, rested in part on the Court of Appeals' conclusion that trial counsel made a reasonable strategic decision to acquiesce in the Felonious Assault jury instruction in order to obtain an instruction on the less serious offense of Aggravated Assault. This constituted an application of the *Strickland* standards, which mandates the strong presumption that counsel's performance was based on sound strategy and was "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. In this manner, then, the Ohio Court of Appeals' Rule 26(B) decision rested on the correct federal constitutional legal standards.

In support of its application of these standards, the Ohio Court of Appeals reached a factual finding – that Freeman's trial counsel acquiesced in the Felonious Assault jury instruction. This was not an unreasonable determination of fact, although there is some doubt as

to its accuracy.  In order to show that this factual finding was unreasonable, the trial transcript

must establish by clear and convincing evidence that trial counsel did not acquiesce in the

Felonious Assault instruction.  *See* 28 U.S.C. §2254(e)(1).

      During the trial judge's jury instruction conference with counsel, Freeman's counsel

objected to the Felonious Assault instruction as follows:

| | |
|---|---|
| The Court: | If the defendant is to be convicted of felonious assault, the jury has to find that the defendant knowingly caused, either knowingly, either caused serious physical harm to another or caused physical harm by means of a deadly weapon. |

* * *

| | |
|---|---|
| The Court: | ... My concern is that the Courts have used lesser offenses as those that are contained – all of the elements of the lesser must be contained within the elements alleged in the greater.  You can't add another element and have a lesser offense be classified as a lesser.  So, you take the principal charge and look at those elements, and then see if the proposed lesser fits within all those elements. |
| |     My concern is there is no element in the greater charge that refers to the use of a deadly weapon other than in the specification. The specification would obtain to all the lessers, also.  So, I think – I don't think it is any stretch of the imagination to say that serious physical harm is a lesser degree of harm than death. |
| |     So, I want to get an agreement of counsel that that is the appropriate felonious assault alternative that you want the Court to instruct on. |
| [Freeman's Counsel]: | We don't disagree with that Your Honor.  Your Honor, we had already talked and understood that you were going to instruct on felonious anyway, just for a clean record. |
| The Court: | I don't have to instruct on felonious assault at all if you don't want. |
| [Freeman's Counsel]: | We did want to object to felonious yesterday, but I thought it was pretty clear you were going to instruct on it, but <u>we would object to felonious</u>. |

17

(Doc. #4, Exh. 37 at Tr. 1127-28)(emphasis added).  Having thus heard Freeman's attorney's

objection to the Felonious Assault instruction, the trial judge turned to the Aggravated Assault

jury instruction.

        As with the Felonious Assault instruction, the trial judge was concerned over the element

of "causing serious physical harm."

| | |
|---|---|
| The Court: | Aggravated assault, the same issue really is in the aggravated assault, in order to have aggravated assault as a lesser, you have to decide whether the element of causing serious harm, which is going to be the lesser of the death, it is serious physical harm or physical harm by means of a deadly weapon?... |
| [Freeman's Counsel]: | Following this reasoning, we indicate physical harm, not with a deadly weapon.  That is not what the indictment talks about.  We are at least staying with consistency. |
| The Court: | So, you agree in each instance it is serious physical harm? |
| [Freeman's Counsel]: | That is going to cause. |
| The Court: | Contained within the element of causing death? |
| [Freeman's Counsel]: | Yes. |
| The Court: | All right.  That is resolved then.  We will instruct on that. |

*Id*. at Tr. 1128-29.

        Although this colloquy could be reasonably read, as Freeman does, *see* Doc. #6 at 8-10,

as not showing acquiescence by Freeman's counsel to the Felonious Assault instruction, it can

also be read – as the Ohio Court of Appeals did – as containing counsel's acquiescence in the

proposed Felonious Assault jury instruction as long as it was consistent with the Aggravated

Assault jury instruction in requiring proof that Freeman caused serious physical harm to the

officers.  Consequently, the Ohio Court of Appeals' factual finding of acquiescence by Freeman's counsel in the Felonious Assault instruction is supported by a reasonable reading of the transcript, and therefore, the Ohio Court of Appeals' finding of fact regarding acquiescence cannot be disturbed in federal habeas corpus review.  *See* 28 U.S.C. §2254(e)(1).

Turning to the Ohio Court of Appeals' reliance on Freeman's trial counsel's strategy as a basis for rejecting his ineffective assistance claims, this was not an unreasonable application of the *Strickland* standards.  From those portions of the trial transcript quoted above, trial counsel sought to minimize Freeman's exposure to the possibility of more serious criminal convictions by agreeing to a jury instruction on Aggravated Assault, which as charged by the trial court, was a fourth degree felony.  *See* Ohio Rev. Code §2903.12(B).  Although this strategy did not succeed, the distorting effects of hindsight cannot be used to evaluate counsel's trial strategy and mere error is not enough to show constitutionally deficient performance by trial counsel.  *See Strickland*, 466 U.S. at 689.  Instead, Freeman's trial counsel attempted, albeit unsuccessfully, to limit Freeman's possible criminal liability and sentences, an approach well within the wide range of reasonable performance to which Freeman was constitutionally entitled.  *See id*.

In addition, Freeman overlooks that at the time of his trial, the Court of Appeals in Montgomery County, Ohio, as well as the Court of Appeals of at least one other Ohio county, considered Felonious Assault with a deadly weapon to be a lesser included offense of Attempted Murder.  *See State v. Barnes*, 94 Ohio St.3d 21, 28 (2002) (citing in part *State v. Kaiser* (Oct. 15, 1986), Montgomery App. No. 9287, unreported, 1986 WL 11812).[5]  Facing this state of Ohio

---

[5]  To his credit, Freeman acknowledges that this was the state of Ohio law in Montgomery County at the time of his trial in March 2001.  (Doc. #6 at 8).  Freeman also points out that in January 2002, during his direct appeal, the Ohio Supreme Court decided *Barnes*, which would have been controlling at Freeman's trial if it had been decided prior to March 2001.  *Id*. at 10.  It was not, however, and consequently the trial court followed law applicable in Montgomery County at the time of Freeman's trial.

law at the time of Freeman's trial, and the ensuing likelihood of a jury instruction on Felonious Assault, it was not unreasonable trial strategy for Freeman's counsel to attempt to avoid more serious convictions of Felonious Assault by agreeing to a jury instruction on the less serious offense of Aggravated Assault. If successful, this strategy created the possibility that Freeman would be convicted of Aggravated Assault and sentenced to imprisonment lasting months, *see* Ohio Rev. Code §§2903.12(B), 2929.14(A), as opposed convictions for Felonious Assault and sentences lasting years. It is insignificant that the Ohio Supreme Court later found Felonious Assault with a deadly weapon not a lesser included offense of Attempted Murder, *See Barnes*, 94 Ohio St.3d at 26, because this was not the state of Ohio law in Montgomery County at the time of Freeman's trial. *See Barnes*, 94 Ohio St.3d at 28 (listing cases). Freeman's trial counsel's acquiescence to the jury instructions was consistent with the law in Montgomery County at the time of Freeman's trial.

One perplexing difficulty of this case <u>in hindsight</u> is that the jury found Freeman not guilty of attempted murder. In light of this it is doubtlessly tempting for Freeman to speculate in hindsight about what might have occurred if the trial court had not instructed the jury on any lesser included offense. Such speculation can lead to the result Freeman most certainly wanted – no convictions at all due to the jury's findings of not guilty on the attempted murder charges. This, however, is pure speculation and is consequently far from certain. This uncertainty is mainly why trial counsel's performance cannot be viewed with the distorting effects of hindsight but must be viewed under the circumstances facing Freeman's counsel at trial. *See Strickland*, 466 U.S. at 689. The primary challenge facing trial counsel was the potential convictions for Attempted Murder, which Freeman's counsel attempted to minimize by acquiescing to jury instructions on Felonious Assault and Aggravated Assault. Since this strategy was consistent

20

with Ohio law at the time in Montgomery County and since the strategy was partially successful by securing convictions on offenses less serious than Attempted Murder, trial counsel's performance with regard to the jury instructions was within the wide range of reasonable professional assistance required by the Fourteenth Amendment.  *See Strickland*, 466 U.S. at 689.

Because Freeman's trial counsel did not provide constitutionally ineffective assistance, Freeman's appellate counsel likewise did not provide constitutionally ineffective assistance by omitting a federal constitutional challenge to Freeman's trial counsel's performance.

Accordingly, for all these reasons, the Ohio Court of Appeals' rejection of Freeman's ineffective assistant of trial and appellate counsel claims did not result from an unreasonable finding of fact regarding trial counsel's acquiescence in the Felonious Assault jury instruction and did not result from an unreasonable application of federal law as decided by the United States Supreme Court.

The analysis of Freeman's Habeas Petition does not end here, because the Ohio Court of Appeals did not specifically address Freeman's claim that appellate and trial counsel provided ineffective assistance by not challenging the trial court's constructive amendment of the indictment.  The inquiry next turns to this issue.

### D.    Ineffective Assistance of Appellate Counsel – *De Novo* Review

"Failure of appellate counsel to raise an issue can amount to constitutionally ineffective assistance....  However, counsel has no obligation to raise every possible claim..., and the decision of which among the possible claims to pursue is ordinarily entrusted to counsel's professional judgment....  'Counsel's performance is strongly presumed to be effective.'...  Even if counsel made a mistake, the mistake might not be serious enough to have affected the defendant's constitutional right to counsel."  *McFarland v. Yukins*, 356 F.3d 688, 710-11 (6th Cir.

2004)(citations omitted).

When conducting a *de novo* review of Freeman's appellate counsel's performance, many factors apply including, but are not limited to, the following:

1. Were the omitted issues significant and obvious?

2. Was there arguably contrary authority on the omitted issues?

3. Were the omitted issues clearly stronger than those presented?

4. Were the omitted issues objected to at trial?

5. Were the trial court's rulings subject to deference on appeal?

6. Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?

7. What was appellate counsel's level of experience and expertise?

8. Did the petitioner and appellate counsel meet and go over possible issues?

9. Is there evidence that counsel reviewed all the facts?

10. Were the omitted issues dealt with in other assignments of error?

11. Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*McFarland*, 356 F.3d at 711 (quoting *Mapes v. Coyle*, 171 F.3d 408, 427-29 (6th Cir. 1999)). This is not an exhaustive list and it must not lead the Court into producing "a correct 'score'...." *Greer v. Mitchell*, 264 F.3d 663, 679 (6th Cir. 2001).

Beginning with the strong presumption that the performance of Freeman's appellate counsel was effective, *see McFarland*, 356 F.3d at 711, a review of the first few factors reveals that his appellate counsel's performance did not fall below the level of reasonable professional assistance. Freeman's claim – not raised by his appellate counsel – that trial counsel provided ineffective assistance by not objecting to the trial court's constructive amendment of the

indictment was neither significant nor obvious.  This is so because – as explained above – the

trial judge's decision to instruct the jury on Felonious Assault as a lesser included offense of

Attempted Murder was consistent with the state of Ohio law in Montgomery County at the time

and therefore did not effect a constructive amendment to the indictment.  *See Barnes*, 94 Ohio

St.3d at 28 (citing in part *State v. Kaiser* (Oct. 15, 1986), Montgomery App. No. 9287,

unreported, 1986 WL 11812); *see also Lucas v. O'Dea*, 179 F.3d 412, 416-17 (6th Cir.

1999)(citing in part and parenthetically explaining *United States v. Ellis*, 121 F.3d 908, 923 (4th

Cir. 1997)(holding that where an indictment encompasses the specific legal theory or evidence

used at trial, no constructive amendment occurs).

Although *Barnes* was decided while Freeman's direct appeal was pending before the

Ohio Court of Appeals, it had not been decided before Freeman's trial or before the time during

which Freeman's briefs had to be filed in the Ohio Court of Appeals.  Freeman's appellate

counsel was required, and did, file a Notice of Appeal within thirty days of Freeman's judgment

of conviction.  *See* Ohio R. App. P. 4(A).  Freeman's appellate counsel then filed his timely

Brief on August 27, 2001.  (Doc. #4, Exh. 18).  The State filed its timely Brief on November 16,

2001, after service of which, Freeman had ten days to file a Reply Brief, *see* Ohio R. App. P.

18(A).  Because this briefing period occurred well before the Ohio Supreme Court decided

*Barnes*, appellate counsel did not ignore or omit a significant and obvious issue from Freeman's

direct appeal.

In addition, as Freeman correctly acknowledges, *see* Doc. #7 at 8, at the time of his direct

appeal, there was directly contrary controlling authority in Montgomery County, *State v. Kaiser*

(Oct. 15, 1986), Montgomery App. No. 9287, unreported, 1986 WL 11812), on an issue resolved

by *Barnes* and omitted by appellate counsel.  Because of this contrary controlling authority, the

issue resolved by *Barnes* and omitted by appellate counsel was not clearly stronger than those presented by counsel on Freeman's direct appeal. Indeed, appellate counsel presented two strong Fourth Amendment challenges to Freeman's convictions, which if wholly successful would have resulted in a reversal of his convictions. *See* Doc. #4, Exh. 18. Freeman's appellate counsel wrote a well-reasoned brief, citing pertinent facts and United States Supreme Court cases, and seeking a reversal of his convictions. *See id.* This is simply not a case where an appellate counsel's decision to omit an obvious issue was an unreasonable decision, which only an      incompetent attorney would adopt.

Accordingly, appellate counsel did not provide constitutionally ineffective assistance on Freeman's direct appeal by omitting a constitutional challenge to trial counsel's failure to litigate whether the trial court's jury instruction contained a constructive amendment to the indictment.

### E.    Freeman's *Blakely* Claims Lack Merit

Freeman seeks to raise various claims and arguments under *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531 (2004) and various similar Ohio cases decided after *Blakely*. *See* Doc. #s 7-9. Because *Blakely* does not apply retroactively to Freeman's convictions, *see Humphress v. United States*, 398 F.3d 855, 857 (6th Cir. 2005), these claims and arguments lack merit.

### F.    Certificate of Appealability

A person in custody upon a state conviction seeking to appeal an adverse ruling on a Petition for Writ of Habeas Corpus in the District Court must obtain a certificate of appealability before proceeding on appeal. 28 U.S.C. §2253; *see* Fed. R. App. P. 22.

The AEDPA provides in pertinent part:

(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–

(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court;  or

(B) the final order in a proceeding under section 2255.

(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. §2253(c).  Districts Courts have the power to issue certificates of appealability under

the AEDPA in §2254 cases.  *United States v. Mitchell*, 216 F.3d 1126, 1129 (D.C. Cir. 2000)

(citing in part *Lyons v. Ohio Adult Parole Authority*, 105 F.3d 1063, 1073 (6th Cir. 1997)).

A certificate of appealability is issued only if the petitioner seeks to raise on appeal issues

having substantial merit which are worthy of further consideration and on which reasonable

jurists could differ.  *Barefoot v. Estelle,* 463 U.S. 880 (1983).  The standard is higher than the

absence of frivolity required to permit an appeal to proceed *in forma pauperis  Id*. at 893.

> Obviously the petitioner need not show that he should prevail on the merits....  Rather, he must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.'

*Id*. at n.4.

In the instant case, Freeman should be granted a certificate of appealability at the time of

the District Court's final Order and Judgment in this case on the merits of his claims that his trial

and appellate counsel provided constitutionally ineffective assistance by not raising a federal

constitutional challenge to the jury instructions on Felonious Assault.  These claims are more

than frivolous and have substantial merit.  Reasonable jurists could disagree with the Ohio Court

of Appeals' Rule 26(B) decision on Freeman's ineffective assistance of counsel claims, because

(1) the Ohio Court of Appeals did not discuss the applicable federal constitutional standards

under *Strickland*, (2) the Ohio Court of Appeals reached a questionable finding of fact without citation to the record or detailed explanation regarding trial counsel's acquiescence in the Felonious Assault jury instruction, (3) the Ohio Court of Appeals ignored Freeman's claim regarding counsel's failure to challenge the constructive amendment to the indictment, and – most significantly – (4) during Freeman's direct appeal, the Ohio Supreme Court held in *State v. Barnes*, 94 Ohio St.3d 21, 28 (2002) that Felonious Assault with a deadly weapon was not – in contrast to Freeman's jury instructions – a lesser included offense of Attempted Murder.

**IT IS THEREFORE RECOMMENDED THAT:**

1.      Alonzo Freeman, Jr.'s Petition for Writ of Habeas Corpus (Doc. #1) be DENIED
        and DISMISSED;

2.      A certificate of appealability issue under 28 U.S.C. §2253 be GRANTED as
        discussed herein; and

3.      This case be terminated on the docket of this Court.


May 11, 2006

                                    _____s/ Sharon L. Ovington_____
                                        Sharon L. Ovington
                                    United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).